In re Raymond Charles MULCH and Cheryl Renee Mulch, Debtors.

Bankruptcy No. 94–50437–JRG.

United States Bankruptcy Court, N.D. California.

May 4, 1995.

David B. Rao, Binder & Malter, San Jose, CA, for lienholder Baugh.

Merrill E. Zimmershead, A Professional Law Corp., Gilroy, CA, for debtors.

## MEMORANDUM DECISION

JAMES R. GRUBE, Bankruptcy Judge.

### INTRODUCTION

On January 21, 1994 the debtors filed a Chapter 7 bankruptcy petition. Thereafter, the debtors brought this motion to avoid judicial liens pursuant to 11 U.S.C. § 522(f)(1).[1] One of the lienholders, Bradford Baugh, contested the motion. The fair market value of the subject property, known as 345 Leavesley Road, Gilroy, California is disputed as is the precise amount of the liens encumbering it. Before litigating this dispute, the parties requested that the court decide two threshold legal issues which Mr. Baugh believed would resolve the motion.

First, Mr. Baugh points out that the debtors have not recorded a declaration of homestead under C.C.P. § 704.920. Rather, they have claimed an exemption under the "automatic" homestead provision of C.C.P. § 704.720. However, there is no pending forced sale of the property and therefore Mr. Baugh argues the debtors are not entitled to the "automatic" homestead exemption under

---

1. Unless otherwise specified, section references in this opinion are to Title 11 of the United States Code (the "Bankruptcy Code").

California law. As bankruptcy law cannot increase the exemption rights held by debtors under state law, he believes the motion must be denied.

Secondly, Mr. Baugh argues that the homestead exemption of the debtors, if any, is not impaired by his lien under controlling Ninth Circuit authority and therefore the lien cannot be avoided. In support of this argument he cites *In re Chabot*, 992 F.2d 891 (9th Cir.1993), which is applicable to this case.[2]

## DISCUSSION

### I. THE MULCHES' HOMESTEAD EXEMPTION AS IT EXISTS UNDER CALIFORNIA LAW.

Pursuant to the authority of § 522(b)(1), the California legislature has elected to "opt out" of the federal bankruptcy exemptions set forth in § 522(d) such that the federal exemptions are expressly not authorized in California. C.C.P. § 703.130. Because California has opted out of the federal exemption scheme, the Court must initially determine the scope of the debtors' homestead exemption by reference to state law. 11 U.S.C. § 522(b)(1).

### A. *There Are Two Types Of Homestead Exemptions In California.*

■ Unlike many other states, California's current statutory scheme addressing exemptions contemplates that a person may assert an entitlement to the homestead exemption[3] in either of two ways. First, C.C.P. § 704.920 authorizes a declared homestead exemption.[4] Entitlement to the declared homestead exemption requires that a person

comply with certain procedural requirements, including recordation of a declaration of homestead in the office of the county recorder. C.C.P. §§ 704.920–704.930. The recorded homestead declaration protects the property from execution by certain creditors to the extent of the amount of the homestead exemption. 5 *Miller & Starr, California Real Estate* § 13.1 (2d ed. 1989).

However, many judgment debtors failed to execute a declaration of homestead on their property notwithstanding the availability of the exemption. *Webb v. Trippet*, 235 Cal. App.3d 647, 650, 286 Cal.Rptr. 742 (1991). The unintended result was that only the more sophisticated homeowner, who had followed the statutory procedure, obtained the exemption. *Id.* Because the fundamental purpose behind the exemption was largely frustrated, the California legislature in 1974 enacted legislation creating the automatic homestead exemption where no homestead declaration had been filed. *Id.*

■ C.C.P. § 704.720 provides a homeowner with a residential homestead exemption which may be claimed upon a forced sale of the property.[5] This exemption is often referred to as the automatic homestead since the homeowner need not file a declaration of homestead to be entitled to this exemption. The automatic homestead exemption is available when a party has continuously resided in a dwelling from the time that a creditor's lien attaches until a court's determination in the forced sale process that the exemption does not apply. *Webb v. Trippet*, 235 Cal. App.3d at 651, 286 Cal.Rptr. 742; C.C.P. § 704.710(c). In the forced sale process, the homestead shall not be sold unless there is a

---

**2.** *See infra* note 10.

**3.** The California Constitution provides that a portion of homestead property is to be protected from a forced sale. Cal. Const., art. XX. § 1.5. The underlying policy is to protect property from existing debts and to prevent creditors from taking all property belonging to a judgment debtor in order to satisfy creditors' claims. *Yager v. Yager*, 7 Cal.2d 213, 217, 60 P.2d 422 (1936); *see also Becker v. Lindsay*, 16 Cal.3d 188, 194, 127 Cal.Rptr. 348, 545 P.2d 260 (1976); *Schoenfeld v. Norberg*, 267 Cal.App.2d 496, 72 Cal.Rptr. 924 (1968); *Rich v. Ervin*, 86 Cal.App.2d 386, 390–91, 194 P.2d 809 (1948).

**4.** C.C.P. § 704.920 provides in relevant part:

A dwelling in which an owner or spouse of an owner resides may be selected as a declared homestead pursuant to this article by recording a homestead declaration in the office of the county recorder where the dwelling is located.

**5.** C.C.P. § 704.720(b) provides in relevant part:

If a homestead is sold under this division or is damaged or destroyed or is acquired for public use, the proceeds of sale or of insurance ... are exempt in the amount of the homestead exemption provided in Section 704.730.

bid that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy the liens and encumbrances on the property senior to the executing creditor's lien. C.C.P. § 704.800. Absent sufficient value in the property, the sale cannot go forward but the judgment lien is otherwise unaffected.

■ The legislature chose not to repeal the declared homestead exemption in favor of the newly created residential exemption and instead elected to create two separate protections. 5 *Miller & Starr, California Real Estate* § 13.1. The clear public policy of these two exemptions is to provide that one or the other exemption applies if a dwelling qualifies as a homestead. *Id.*

### B. *Distinctions Exist Between Operation Of Declared And Automatic Homestead Exemption.*

■ The declared homestead and the automatic homestead are separate and distinct protections that operate differently. *See* 5 *Miller & Starr, California Real Estate* § 13.1. The declared homestead and the automatic exemption each confer different rights on the homesteader, and there is no overlap between these rights. *In re Anderson,* 824 F.2d 754, 756 (9th Cir.1987); *Webb v. Trippet,* 235 Cal.App.3d at 651, 286 Cal.Rptr. 742. One may have rights under the declared homestead law, or rights under the automatic exemption law, or both, or neither. *Anderson,* 824 F.2d at 756; *Webb v. Trippet,* 235 Cal.App.3d at 651, 286 Cal.Rptr. 742.

■ The declared homestead provides benefits in addition to those granted by the automatic homestead. *Anderson,* 824 F.2d at 757. First, the declared homestead provides protection of the proceeds from a voluntary sale of the homestead. *Id.* Second, judgment liens attach only to the equity in excess of consensual liens and the debtor's homestead. *Id.* Third, the protections of the declared homestead against attachment

of judgment liens survive the death of the homestead owner. *Id.*

■ Perhaps the most significant difference between the automatic homestead and the declared homestead under California law is that the declared homestead entitles the debtor to the exemption upon a voluntary sale of the homestead property, and the proceeds remain exempt for six months.[6] This allows the debtor to reinvest the proceeds in another residence. *In re Cole,* 93 B.R. 707, 708 (9th Cir. BAP 1988). On the other hand, the automatic homestead entitles the debtor to the exemption only upon a forced execution sale. C.C.P. § 704.720(b).[7] The debtor is not entitled to the automatic homestead upon a voluntary sale of the property, or upon a sale pursuant to a consensual deed of trust. C.C.P. § 703.010(b); *In re Anderson,* 824 F.2d 754, 756 (9th Cir.1987); *In re Cole,* 93 B.R. at 708 n. 1; *Spencer v. Lowery,* 235 Cal.App.3d 1636, 1 Cal.Rptr.2d 795 (1991).

Thus, if Mr. and Mrs. Mulch attempted to voluntarily sell the property outside the protections afforded by bankruptcy it is clear that no homestead exemption would be available to them under state law.

### II. BANKRUPTCY LAW EFFECTS THE MULCHES' EXEMPTION RIGHTS.

### A. *The Mulches' Are Entitled To Claim The "Automatic" Homestead.*

■ State law generally determines the existence and scope of the debtor's interest in property. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). Absent some compelling federal interest requiring a different result, there is no reason why property interests should be analyzed differently simply because one of the parties is in bankruptcy. *Id.* Notwithstanding this general proposition, the role of § 522(f) in providing the debtor a fresh start constitutes such a compelling federal interest that it provides a

---

**6.** C.C.P. § 704.960(a) provides:

If a declared homestead is voluntarily sold, the proceeds of sale are exempt in the amount pro-

vided by Section 704.730 for a period of six months after the date of sale.

**7.** *See supra* note 5.

debtor with greater rights in bankruptcy than generally available under state law.

■ It is clear that the analysis of lien avoidance under § 522(f)(1) involves more than the determination of exemption rights under state law. *Owen v. Owen,* 500 U.S. 305, 309–12, 111 S.Ct. 1833, 1836–37, 114 L.Ed.2d 350 (1991); *see also In re Morgan,* 149 B.R. 147, 153 (9th Cir. BAP 1993). *Owen* explains that the state of affairs considered by a court is hypothetical, not actual. The question is not "whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he would have been entitled but for the lien itself." *Owen* at 310–11, 111 S.Ct. at 1836. *Owen* involved a judgment lien that could not be defeated by the debtor's homestead under Florida law. Nevertheless, the court allowed the debtor to avoid the lien under § 522(f)(1) because he would have been entitled to the exemption "but for the lien at issue." *Id.* In essence, we must "ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien." *Id.* at 312–13, 111 S.Ct. at 1837.

Absent the judgment liens on the debtors' residence, the Mulches were entitled to a homestead exemption. Had they recorded a homestead declaration prior to filing their bankruptcy petition, the *Owen* analysis would clearly have allowed them to avoid the judgment liens under § 522(f)(1).

■ Conversely, the debtors would not be entitled to claim the automatic homestead exemption outside of the protections afforded by bankruptcy because there is no forced sale. However, the Bankruptcy Appellate Panel has repeatedly held that the filing of the bankruptcy petition constitutes a hypothetical attempt by the trustee to levy on the property. *See, e.g., In re Mayer,* 167 B.R. 186, 189 (9th Cir. BAP 1994). For purposes of determining the debtor's entitlement to the automatic homestead exemption this hypothetical levy is the functional equivalent of a forced sale under California law. *In re Mayer,* 167 B.R. at 189; *In re Morgan,* 149 B.R. at 153; *In re Herman,* 120 B.R. 127, 130 (9th Cir. BAP 1990). Applying the reasoning of these cases, the debtors have available to them the automatic homestead exemption provided in C.C.P. § 704.720 for purposes of lien avoidance under § 522(f)(1).[8]

## B. *The Mulches' Homestead Exemption Is Impaired By The Lien.*

■ Section 522(f)(1) permits a debtor to avoid the fixing of a judicial lien that impairs the debtor's exemption.[9] Prior to *In re Chabot,* 992 F.2d 891 (9th Cir.1993), courts analyzed whether a judgment lien impairs a debtor's homestead exemption by determining whether the debtor had any equity above the senior consensual liens and the debtor's homestead exemption. *In re Herman,* 120 B.R. at 131. If the lien was found to have no present economic value, it was avoided in its entirety. *In re Bruton,* 167 B.R. 923, 926 (Bankr.S.D.Cal.1994). This analysis allowed courts to avoid the undersecured portions of judicial liens. *In re Galvan,* 110 B.R. 446, 451–52 (9th Cir. BAP 1990). Allowing the unsecured portion of a judicial lien to remain as a charge against property in which the debtor has exemption rights constitutes a significant impairment to the debtor's right to a fresh start. *Id.* at 451.

■ In *Chabot,* the Ninth Circuit attempted to clarify the meaning of impairment of an exemption as contemplated under

---

8. The court notes that the automatic homestead exemption has traditionally been available in bankruptcy. Where a Chapter 7 trustee forces a sale because of excess equity in the property the automatic homestead is available because the trustee represents the collective creditor interest in forcing the sale. Similarly, where a Chapter 11 debtor in possession voluntarily sells a residence in which there is surplus equity the automatic homestead is available. The debtor in possession is simply carrying out its fiduciary duty to recover the surplus for the creditor body. *In re Cole,* 93 B.R. 707 (9th Cir. BAP 1988).

9. 11 U.S.C. § 522(f)(1) provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is (1) a judicial lien.

§ 522(f)(1).[10] It held that an exemption is impaired only if a judicial lien impacts the debtor's ability to recover the amount of the exemption, thereby diminishing the value of the exemption. *Chabot,* 992 F.2d at 895. Unless the amount of the exemption is diminished by the lien, the lien cannot be avoided under § 522(f)(1). *Chabot* altered the manner in which courts in this circuit dealt with motions to avoid judicial liens by holding that the unsecured portions of judicial liens should not be avoided because post-petition appreciation inures to the benefit of creditors. *Chabot,* 992 F.2d at 894. *See also In re Hyman,* 967 F.2d 1316 (9th Cir.1992). Applying this reasoning, the unsecured portion of liens would not be avoided; instead, the liens remain and attach to any post-petition appreciation in the property.[11]

*Chabot* involved a declared homestead exemption in a residence in which the debtor had over $230,000 of surplus equity in excess of the homestead and consensual deeds of trust. The judicial lien that the debtors sought to avoid had attached to the equity above the amount of the trust deeds and homestead exemption but had no impact on the Chabots' ability to recover their exemption. *Id.* at 895.

The situation is distinguishable however, when there is no surplus equity in the property to which a judicial lien can attach. In this circumstance, the existence of a lien in such a case decreases the value of the property and impedes the ability of a debtor to realize the full amount of the home-

stead exemption. *In re Wilson,* 175 B.R. 735, 741 (N.D.Cal.1994). As a result, the lien impairs the exemption to which a debtor is entitled in bankruptcy. *Id.* at 741. Once a debtor emerges from bankruptcy, he or she will lose the protection of the automatic homestead exemption since only pursuant to bankruptcy law is there a hypothetical levy. Since it is not possible to subordinate the judicial lien in the future to an exemption that exists only in bankruptcy, avoidance of the lien is necessary to protect a debtor's fresh start by insuring the opportunity to receive the full amount of the exemption.[12] *Id.* at 741.

Consistent with this analysis, the debtors are entitled to avoid the judicial liens provided there is no surplus equity in the property.

## CONCLUSION

As the parties have reserved the issues of the fair market value of the residence and the precise amount owed on the encumbrances, the debtor should notice a further hearing at which time the court will enter a scheduling order for the determination of these issues.

---

**10.** When Congress enacted the 1994 Bankruptcy Reform Act, which became effective on October 21, 1994, it abrogated *Chabot* by authorizing the avoidance of the unsecured portions of judicial liens. Nevertheless, *Chabot* was the law of the circuit at the time this case arose and therefore applies to this case.

**11.** The recordation of an abstract of judgment creates a judgment lien on real property. C.C.P. § 697.310(a). However, where the debtor has recorded a homestead declaration, a judgment lien attaches to the declared homestead only in the amount of any surplus over the total of all prior liens and encumbrances and the amount of the homestead. C.C.P. § 704.950(c). On the other hand, a judgment lien can attach to real property that may subsequently be found subject to the automatic homestead exemption at the

time the property is sold to satisfy a money judgment. *Reddy v. Gonzalez,* 8 Cal.App. 4th 118, 121, 10 Cal.Rptr.2d 55, 57 (1992). As such, the automatic homestead exemption may be characterized as a latent right to an exemption that fully matures at the time the judgment debtor asserts the right at an execution sale.

**12.** Section 522(f) is one of the significant provisions of the Bankruptcy Code directed to assuring that debtors gain a fresh start in their financial lives. *In re Galvan,* 110 B.R. 446, 451 (9th Cir. BAP 1990), *overruled on other grounds, In re Chabot,* 992 F.2d 891 (9th Cir.1993), *overruled,* 1994 Bankruptcy Reform Act § 303. The court also notes that the result is consistent with *Chabot 's* holding that a debtor is "... entitled to the set amount of the exemption, no more and no less." *Chabot* at 896.